# COURT OF APPEALS

LEMUEL ARNOLD, JR., Respondent agt. JAMES H. REES, Appellant.

The legislature has authority to confer jurisdiction on the *county courts* in suits for the *foreclosure of mortgages* upon lands in the county, and the sale of mortgaged premises therein. And the exercise of such jurisdiction by the county courts is *constitutional* and *valid*. (*This decision reverses that of the general term of the supreme court in the second district, in this case, and overrules the decision of the same general term in the case of Hall* agt. *Nelson,* (23 *Barb.* 88 ; *S. C. special term,* 14 *How.* 32.)

ON the 4th day of April, 1856, Rees rented of W. E. Ar-

nold four rooms in No. 28 Sackett street, Brooklyn, at an annual rent of $125, payable monthly in advance. W. E. Arnold assigned and set over to said Lemuel Arnold, junior, the agreement of said Rees for hiring said premises.

This action is commenced for six months' rent against said Rees.

The answer sets up that the premises No. 28 Sackett street, were subject to a mortgage to Cornelius D. Blake, dated July 1st, 1853, and which was under foreclosure in the county court of Kings county, at the time Rees made said agreement of hiring, the pendency of action in which was filed at the date of said hiring, and judgment of foreclosure and sale was entered on the 3d of March, 1856, before the county judge, and the premises were sold pursuant to said judgment on the 20th day of May, 1856, and deeded to Anson Blake on the 23d day of May, 1856, and that Rees thereupon attorned to and acknowledged said Blake as the owner of said property, and entitled to the rent, and paid him accordingly, and denies that he owes the plaintiff rent for said premises. The plaintiff demurred to the answer, alleging that the county court of Kings county had no jurisdiction of the subject of the action, and that the judgment of foreclosure and sale of the mortgaged premises, and all subsequent proceedings, were null and void, and that the attornment of Rees to Anson Blake, was void and of no effect.

In October, 1856, the general term of the supreme court, second district, decided by a majority judgment, that so much of the Code of Procedure which confers upon county courts jurisdiction of suits for the foreclosure of mortgages, was unconstitutional and void. (23 *Barb.* 88.)

The demurrer came on for argument before Justice BROWN, on the 9th day of February, 1858, who gave judgment in favor of the plaintiff on the demurrer, with costs, in accordance with said decision.

The general term affirmed said judgment with costs.

Judgment was therefore entered for damages and costs, and Rees appeals therefrom to this court.

ANDREW THOMPSON, *for appellant.*

*First.* The 14th section of article 6 of the constitution, established a county court with such jurisdiction in special cases as the legislature might prescribe, but having no original jurisdiction except in such special cases; and that the legislature might confer equity jurisdiction in special cases upon the county judge.

The legislature by the 30th section of the judiciary act, page 328 of *Laws of* 1847, *Vol. I,* conferred upon the county court a limited common law jurisdiction.

By the 31st section of the same act, they conferred upon the county courts equity jurisdiction in six cases, and which are part of the special cases in equity particularly mentioned in *Barbour's Chancery Practice,* and composing his *5th book, Vol. I, page* 5 *of the Preface, Vol. II, pages* 147 *to* 319.

In *5th Barbour,* 169, Judges CADY and WILLARD, passed upon the 30th section of the judiciary act, and decided that the legislature had power to prescribe in what special cases the county court should have common law jurisdiction, and held that the 30th section of the judiciary act was constitutional.

In *2d Kernan,* 593, this court decided that said 30th section conferring jurisdiction on the county court in actions of assault and battery, was unconstitutional. Two opinions were given.

Judge GARDINER considered that the legislature could confer original civil jurisdiction upon the county courts in special cases existing at the ratification of the constitution, or *which might thereafter arise,* and that the 8th chapter, 3d part of the Revised Statutes, contained many of the designated special cases, which existed at the ratification of the constitution; but he does not refer to the 31st section of the judiciary act in any respect.

Judge HAND gave an opinion also, upon the 30th section; but he expressly makes an exception as to equity special cases, (*Id. page* 601,) and refers to *Tidd's Practice* for the meaning of a special case at law.

If the judge had fortunately taken up *Barbour's Chancery*

*Practice,* he might have declared the 31st section constitutional.

Since the judiciary act we have the Code, destroying all common law and equity actions, and making every case a special one; so that 2d *Kernan* is not really a controlling decision in an action arising under the Code, and within the meaning of Judge GARDINER, a new family of special cases have arisen. (*Article* 1, *sec.* 17, *and article* 6, *sec.* 24 *of Constitution*; *See the repealing section of the Code,* 468 *and* 469; 15 *New-York Reports,* 451.)

The 30th section of the Code, subdivision 3, authorizes the county courts to foreclose or satisfy a mortgage, and sell the mortgaged premises.

*Second.* The power thus conferred is constitutional. (*See* 20 *Wend.* 381–384; *approved* 3d *Kernan,* 412; 1st *Smith,* 532.)

The only decision controverting the constitutionality is 23d *Barbour,* 88, from which we virtually appeal.

The decision is erroneous; because—

1st. It is based upon 2d *Kernan,* 593, extending it beyond the case and to equity cases, which were particularly excluded from the decision.

2d. It does not note the manifest difference between common law actions, jurisdiction of which was conferred by the 30th section of the judiciary act, on the county courts, and the total change of law and practice effected by the Code.

The correctness of this decision is denied by the judges of the first district, *Benson* agt. *Cromwell. See Judge* MITCHELL's *opinion, given December,* 1857.

*Doubleday* agt. *Heath,* has lately been decided in this court, which decides that the county court has jurisdiction for the partition of real estate, and decides that it is so, because such proceedings were special in their character, and that there was no common law remedy for partition.

Therefore, we are brought to the conclusion that the court below erred, in deciding that the county court of Kings county had no jurisdiction under the 30th section of the Code; because—

1st. At the adoption of· the constitution, the foreclosure of a mortgage and sale of the mortgaged premises was a special case in equity.

2d. The repeal of the old statutes and practice by the adoption of the Code, made it such a special case as the. legislature could direct to be tried by county courts.

3d. That the foreclosure of a mortgage and sale of the mortgaged premises is special in its character. The first two have been sufficiently considered. The next will embrace the third point.

*Third.* The county court had jurisdiction to foreclose mortgages and direct a sale of the mortgaged premises by force of the decision of this court in *Doubleday* agt. *Heath ;* because—

1st. By the constitution of this state of 1777, the office of chancellor is recognized as existing, but by 35th section, only such parts of the common law of England, and of the statute law of England and Great Britain, and of the acts of the legislature of the colony of New-York, as together did form the law of said colony on the 19th day of April, 1775, were declared to be and to continue the law of this state.

2d. There was no statute law of England and Great Britain, respecting the foreclosure and sale of mortgaged premises, on the 19th of April, 1775.

The common law held the estate of the mortgagee absolute after condition *broken,* and would not allow redemption. (1 *Powell on ·Mortgages,* 107–8, *edition of* 1828.)

Equity interfered and established the right to redeem, and as a consequent, the right of the mortgagor to foreclose that equity of redemption. (1 *Powell on Mortgages,* 108 ; 1 *Id.* 336.)

And the English mortgages contained no power of sale, and the court of chancery in England only allowed a sale in six cases, (unless by the consent of the mortgagor,) and then a petition was filed. (*See* 3 *Powell on Mortgages,* 1016 ; 3 *id.* 1121 ; *Equity Draftsman,* 166–454.)

A power of sale has been recently introduced in English mortgages. (*See* 3 *Powell on Mortgages,* 1123.)

And as late as 1825, the lord chancellor would not sanction or give effect to the power of sale in the mortgage. (*See* 1 *Powell on Mortgages*, 9*th* page, *note* 1, *and* 4 *Kent's Com.* 181; 1 *Ves. & Beam.* 223.)

3d. The supreme court was acknowledged and organized by the colonial legislature; the bill as passed, gave equity jurisdiction to the supreme court. The governor would not consent to it, but by ordinance of 1701, established a court of chancery vested in himself and his council.

The assembly repeatedly pronounced the court illegally constituted, and very little business was done in it previous to the revolution or 1775. (1 *Smith's History of New - York*, *p.* 116, (*Ed. of* 1830,) 370, 158, 175 *and* 176, 192, 220, 279 *and* 280, 282 *and* 283, 379 *to* 382; 1 *Rev. Laws*, 494; *court of chancery, established*, 1 *Rev. Laws*, 486; *see* §§ 11, 12, 21, 24.)

The case of *Bergen* agt. *Bennett*, (1*st Caines' Cases in Error*, *p.* 1,) shows that previous to the year 1775, it had become customary to introduce into mortgages clauses authorizing a sale by mortgagees, and a statute was passed in 1775, confirming sales made thereunder, and by this case such a sale was sanctioned, and this was a case of foreclosure by advertisement.

The earliest act of the legislature by which a foreclosure and sale by the chancellor was recognized, was April 1, 1801.

The legislature have added to, modified and altered, proceedings respecting mortgages, so that at the time the last constitution was framed, the court of chancery had power to foreclose mortgages and sell mortgaged premises, compel a delivery of possession of premises to the purchaser, decree payment of the balance of the mortgage debt, and to issue execution therefor; thus embracing in one action a foreclosure—a redemption—a sale—an ejectment and a collection of the amount due instead of a suit on the bond, being summary in all its proceedings, and a creature of the statute, almost if not quite entirely. (2 *Rev. Stat.* 191, 173.)

Chancellor KENT states, that in New-Jersey, there is less innovation upon the common and statute law of the land, as

existed at the period of the revolution, than in any other state. (4 *Kent Com.* 164 *note.*)

Until a recent period, the governor was still chancellor, and in that state there was no act passed for the sale of mortgaged premises until 1831. And in that state still an ejectment is required to get possession, and a suit on the bond to recover the deficiency.

*Fourth.* Possibly a strict foreclosure or a strict redemption might be copied after the chancery of England, but with deference, there is far less reason to consider the foreclosure and sale in existence at the time of the enactment of our last constitution, was warranted by any common law or chancery principle in England, than that partition cases were.

It is probable that there were foreclosures and sales of mortgaged premises prior to 1775 ; but they did not arise from any colonial statute, but from the principles of equity depending upon the particular circumstances of each individual case, and the power of sale contained in the mortgages. (1 *Blac. Com.* 62.)

While on the other hand, there was a colonial law established by the legislature, regulating the partition of lands, and which was in existence in 1775. (*See Colonial Acts in Appendix,* 3d *Vol. Rev. Stat.* 1st *ed.* 11th *to* 21st *pages,* 61st *page,* 68th *and* 69th *pages, and continued to* 90th *page ; Equity Draftsman,* 60–649.)

1st. A foreclosure and sale at the present time is regulated, altered and changed from a strict English foreclosure as much as a partition of the present day, was from an English partition, and is as fully *special* in its character as a partition case.

The allegations of the parties, if made at all, under the notice of "no claim against the defendants," are unlike those in ordinary actions. Everything is summary with the view to save expense and delay.

It certainly may be characterized as a *special* statutory proceeding, taking the place of three or four actions, and bringing all parties before the court, who have or pretend to have, any claim whatever to the premises.

2d. Although the late case of *Doubleday* agt. *Heath*, and the case in 2 *Kern.* 593, were decided as common law cases, yet they are not opposed to mortgage foreclosures and sales being special cases, and Justice HAND admits that there might be special cases in equity, of which county courts could have jurisdiction. Also, all of the decision of *Doubleday* agt. *Heath*, applies to an equity special proceeding for partitions, as all distinction in form is abolished by the Code, and the court of chancery by the Revised Statutes had the same power upon petition or bill to decree a partition or sale, as the law courts had upon petition.

*Fifth.* If this court should conclude that the county court did not have jurisdiction, still the court below erred in sustaining the demurrer. Because—

1st. Blake had a regular deed which constituted him a *de facto* owner, and Rees should not be required to form correct conclusions upon constitutional questions at his peril, and be wiser than the legislature, the bar, and a large part of the bench.

2d. The plaintiff could, by action for the recovery of real property, and damage for detention, have recovered his full rent.

SEABURY KISSAM, *for respondent.*

*First.* Article VI, section 3 of the Constitution is as follows: " There shall be a supreme court having general jurisdiction in law and equity."

*Second.* The section and article of the constitution in question, conferred jurisdiction upon county courts, " in cases arising in justices' courts, and in *special cases,* as the legislature may prescribe; but shall have no original civil jurisdiction except in such special cases."

The inference is clear, that this clause was so adopted in view of the existence at that time of more than one class of cases, viz : cases and *special cases* or actions, and *special proceedings.*

*Third.* The recital to the enacting clause of the Code, is as

Arnold agt. Rees.

follows: "Whereas, &c., the present forms of actions and plead-
ings in cases at common law should be abolished and the dis-
tinction between legal and equitable remedies should no longer
continue, therefore, be it enacted, &c."

Section 1 of the Code divides remedies in courts of justice
into,

1. Actions.

2. Special proceedings.

Section 2. An action is described *as an ordinary proceeding
in a court of justice, by which a party prosecutes another party for
the enforcement or protection of a right, &c.*

Section 3. Every other remedy is a special proceeding.

*Fourth.* The legislature has thus, at the very outset in the
2d section of the Code, prescribed *an ordinary* proceeding in a
court of justice as an *action.* It follows as a matter of course,
that a foreclosure of mortgage by an action is not a remedy by
a special proceeding or a special case, but by the power con-
ferred upon the legislature to prescribe, &c., the act establish-
ing the Code decided and prescribed the question the very
reverse of a special case.

The answer at folio 8 of the judgment roll admits,

1st. That an action was commenced for the foreclosure of a
mortgage.

2d. That there were a party plaintiff and parties defendant.

3d. That a declaration or complaint and plea or answer was
put in.

4th. That notice of pendency of action had been duly filed.

5th. That judgment had been duly entered, not an order or
special decree as in a special case.

Now this with all the form and proceeding of a common law
action, cannot be a special proceeding or special case.

*Fifth.* From the pleadings, as appears by the judgment roll,
the proceedings to foreclose said mortgage was by *an ordinary
proceeding* or action, and not by any special proceeding or in
a special manner, therefore, the respondent herein is entitled
to judgment.

*Sixth.* By the constitution of 1777 and of 1821, the office of

chancellor and the court of chancery is recognized as existing, and so also all such parts of the common law and acts of the legislature and laws of this state as was then, (1777 and 1821,) in force was continued as the law of the state. (*See constitution of* 1821, *article* 7, § 13.)

There were no statutes of this state at the adoption of the constitutions making the foreclosure of mortgages in chancery a *special case* in equity.

Nor any statutes before or since conferring in express terms jurisdiction of chancery in foreclosure of mortgages.

The statute of March 7th, 1785, (*Laws of New - York, Vol. I, p.* 157, *chap.* 27,) recognizes a suit in chancery to foreclose mortgages, and as follows:

" That if any suit hereafter to be commenced by a mortgagee in a court of equity against any mortgagor," &c. (*See the Revised Statutes of* 1813, *Vol. II, p.* 490, §§ 11 *and* 21.)

Since then, a very few provisions have been made by statute as to foreclosures, writ of possession and execution for deficiencies.

*Seventh.* The equity principle and practice in foreclosures have become general equity or chancery principles, and are not *special cases in equity.* The court of chancery was required to have a seal, and all writs and processes were required to issue under the said seal.

Special cases are not thus commenced by an original writ out of a court of equity. Foreclosure of mortgages by bill or action in chancery commenced by original writ and bill at the adoption of the constitutions of 1821 and 1846, formed an ordinary class of cases in equity, and these equitable actions were as frequent in recurrence and as uniform in proceeding as an action or suit of assumpsit, trespass or assault and battery.

*Eighth.* The legislature has not proceeded to prescribe a foreclosure of mortgage by an action to be a special case in equity, and unless it was made so before the adoption of the present constitution, or made so afterwards, it is not and cannot be adjudicated to be so, but directly otherwise.

*Ninth.* The decision of the supreme court in 23 *Barb. p.* 88,

Arnold agt. Rees.

and the reasons there given, show conclusively that foreclo-
sures are not the special cases to which the county court by
said section and article are limited.

*Tenth.* As to partition cases, these are not similar. The leg-
islature instituted in 1813, summary proceedings by petition in
the matter of partition of lands, and the same has since been
amended and revised, and has taken the form of and been car-
ried out in a special statutory manner, and therefore, a special
proceeding. It is commenced by petition, and not by original
writ or suit, as foreclosure of mortgages were. The Code re-
served and adopted these forms and manner of petition. (*See
Code,* § 448.)

*Eleventh.* The decision in the case of *Doubleday* agt. *Heath,*
does not bear against the decision of the supreme court in the
case of 23 *Barb.* 88, but on the contrary the reasoning therein
goes strongly to support that decision.

COMSTOCK, Judge. The constitution (*article* 6, § 14) pro-
vides that " the county court shall have such jurisdiction in cases
arising in justices' courts, and in special cases, as the legis-
lature may prescribe, but shall have no original civil jurisdic-
tion except in such special cases." Another clause in the same
section, declares that "the legislature may confer equity jur-
isdiction in special cases upon the county judge." Acting
upon these provisions, the legislature has attempted to confer
upon the county courts of this state original civil jurisdiction
in various specified or enumerated cases, embracing in the
number the foreclosure of a mortgage, the sale of mortgaged
premises situated within the county, and the collection of any
deficiency remaining unpaid after the sale. (*Code of* 1852, § 30.)
The question now is upon the validity of this exercise of leg-
islative power, and our duty is to determine in its favor, un-
less we are plainly required by the language of the constitution
to do otherwise. It is believed that the jurisdiction thus con-
ferred upon the county courts, has been exercised in numerous
cases. If we determine against it, many titles will doubtless

Arnold agt. Rees.

be overthrown, and great mischiefs will be likely to follow from such decision.

In the mode of interpreting the constitution adopted by those who deny the power which the legislature has thus attempted to exercise, the words " special cases," refer to an inherent, unchangeable distinction between the cases thus designated and all others.   A distinction supposed to exist somewhere in the very nature of legal controversies, which being recognized by the fundamental law is altogether beyond the reach of the legislative power.   It manifestly devolves upon those who place this reading upon the constitution to explain and define in some intelligible manner, what are and what are not special cases in this essential nature, and according to the distinction referred to.   If this cannot be done, then we are bound to inquire whether the words of the constitution do not admit of some other interpretation, which will uphold the jurisdiction in question?

In the case of *Kundolf* agt. *Thalheimer*, (2 *Kern*. 593,) this court decided that the legislature could not confer upon the county courts jurisdiction in the action for assault and battery. In the opinion of Chief Judge GARDINER, delivered in that case, the "special cases" of the constitution are supposed to refer to a large class existing when the constitution was adopted, many of which he observed, would be found in chapter 8, part 3 of the Revised Statutes, entitled "of proceedings in special cases."   It was sufficient, he added, that such a class of cases was distinctly recognized in our statutes, and that there was, therefore, a legal subject *in esse* to which the language of the constitution would apply.   Resorting thus to the existing statutes of the state for a definition of special cases, and assuming that the constitution referred to those cases and others of the same kind created by later statutes, he arrived at the conclusion in which the court concurred, that jurisdiction in common law actions, trespass, &c., could not be given to the county court.   I believe no other attempt has ever been made to define what are special cases under the interpretation of the constitution which we are now considering.

Arnold agt. Rees.

We have now since the change in the pleadings and practice no common law actions, and on some future occasion, if the question shall again arise, it may be deemed advisable to inquire whether the constitution necessarily excludes the power of the legislature to confer jurisdiction on these courts over all the *causes of action* where the appropriate remedy was by a common law suit at the time the constitution was adopted. In some of the present questions it will be useful now to look at the so called special cases in the Revised Statutes, to which it is supposed the constitution had a particular reference. Chapter 8 is entitled "of proceedings in special cases," and is divided into 17 titles. The first of these titles relates to suits by poor persons, the second to proceedings by and against infants. The third embraces suits by and against executors and administrators. The fourth relates to suits by and against public bodies and persons representing them, such as supervisors, commissioners of loans, of common schools and highways, overseers of the poor, &c. The fifth to actions for penalties, forfeitures, &c. The ninth to the action of ejectment for nonpayment of rent. The twelfth to the action of replevin; and the seventeenth contains a variety of provisions, concerning suits and civil proceedings in general. Other titles in the same chapter relate to proceedings peculiar in their nature and form, such as forcible entries and detainer, admeasurement of dower, the draining of swamps, &c. In this enumeration of "special cases," therefore, we find no distinction between common law actions and suits or proceedings of a different character. The poor person on being allowed to prosecute *in forma pauperis*, would bring his action at common law, or he might file his bill in equity. His suit, so far from being a *special case* in any other sense than that of being specially enumerated or made the subject of some particular provision of law, might embrace any subject in the whole range of legal and equitable controversies. So in regard to suits by and against infants, executors and administrators, public bodies and the persons representing them. These special cases were cases at common law, as much so as the action of assumpsit on a note; but there was

some provision of the statute in relation to each of them required by the condition, the age or representative character of the party. Ejectment and replevin were certainly common law remedies and of a very ancient date, yet as we see, they were recognized as special cases at the adoption of the constitution, because upon them also, some special provisions of law were engrafted.

It would seem impossible, therefore, to hold that the constitution in providing for jurisdiction in special cases to be prescribed by the legislature, has excluded *all* the remedies which were prescribed by actions at common law. The reasoning which pervaded (I do not say sustained) the decision in this court, in the assault and battery case of *Kundolf* agt. *Thalheimer*, as we have seen, does not justify such a conclusion. Indeed, if such an interpretation be adopted, then we must hold that the constitution limits the jurisdiction to proceedings of a summary and peculiar character, which are not instituted or conducted in any respect according to the course of the common law. If this had been the intention of those who framed and adopted the constitution, I think more appropriate and precise language would have been used. If the design had been to exclude all subjects of controversy which admitted of the usual and customary remedies, and to include those only where the remedy was peculiar and summary, no one could have been at a loss for words in which to express that design. There is and always has been a known distinction between " cases " at law or in equity, and " proceedings " of a special character, which do not take the form of an action, but are constituted and carried on in some peculiar and anomalous mode. It must be conceded, I think, that the language of the constitution was not well chosen, if it was intended to mark as the subjects of jurisdiction these proceedings only. We certainly ought to look for far greater clearness and precision in expression, before we overreach the legislative interpretation, an interpretation which it ought to be observed, was adopted at the very first session after the constitution had been accepted by

Arnold agt. Rees.

the people, and which has been continued ever since that time. (*Laws of* 1847, *page* 328 ; *Codes of* 1848, 1849, 1851, 1852.)

It is quite certain, then, according to all the definitions ever attempted of the terms used in the constitution, that the county courts can take jurisdiction of some of the cases or causes of action which were cognizable at common law. If, therefore, all such cases are not excluded, is any one of them, provided the legislature sees fit by a special enactment to define the case and confer the jurisdiction? This inquiry I shall not now pursue, because the decision of this court in the case mentioned stands directly in the way of such a discussion.

In a more precise view of the present question, the inquiry is, whether any cause of controversy or suit in respect to which, at the adoption of the constitution, there was a remedy by bill in equity, can now be brought within the jurisdiction of the county courts. Here we shall find still greater difficulties in the way of an interpretation which restricts the power of the legislature. Those who are able to suggest, if they cannot define, the distinction between general and specific cases at law, as depending on the inherent quality of the cases themselves, must fail when they attempt to do so in respect to cases in equity. No such distinction ever existed, nor does it now exist. On the contrary, in the sense of the term special, now considered, it qualifies the entire jurisdiction of courts of equity. The system of equity jurisdiction has arisen out of the special and particular exigencies of society. It was devised, it has increased and been matured through many ages, mainly to relieve and mitigate the rigor of the common law, which through the universality of its principles and the unyielding nature of its forms, failed to do justice in special cases and emergencies. The very judgments of courts of law, pronounced upon certain fixed rules of universal application, by which those courts were bound, were relieved against in equity, under the peculiar and extraordinary circumstances of the particular case. The conditions of fact under which such relief would be given, are of great variety and no attempt to reduce them to uniformity in principle or in statement, could be successfully made. Who

would hesitate to pronounce such a case special when speaking of its nature and quality ?   Illustrations of cases in equity, special in their sense according to the most accurate and precise use of language, might be given almost without number. A very obvious one may be found in the bill for specific performance of a contract, for the sale and purchase of lands where the vendee has failed to perform on his part within the time required by his agreement.   Equity will still preserve his rights and decree performance in his favor, if he can allege special and peculiar facts which ought to relieve him from the forfeiture—such as continued occupation, valuable improvements, payments of money, acquiescence on the part of the vendor, &c.   In legal as well as popular phrase, such a case is special, and in its nature it is eminently of that character.   What authority have we then for saying that the convention which passed, and the people who adopted the constitution, in conferring jurisdiction on the county courts, intended to exclude a case exactly described in the very words of the grant ?

If we adopt the conclusion that all causes which were cognizable by bill in equity, are excluded by the terms of the constitution, then there was no subject to which these terms could be applied except the peculiar cases where the proceeding was not by bill, but a more summary remedy was provided. These, it will be found, were very few in number, so few indeed, that they could have been easily enumerated, if it was intended to confine the jurisdiction to cases of this description.   Some of these, however, it is well to observe, were quite as difficult and complicated as any other in the whole range of equity jurisdiction.   This will be quite evident when we consider that the summary jurisdiction of the court of chancery exercised upon petition merely, embraced corporations, their dissolution in certain cases, the sequestration and distribution of their effects, and the right to restrain by injunction the exercise of their powers. In proceedings of this character, rights of the greatest importance are frequently involved, and the questions are often peculiarly complicated and difficult.   And yet, according to the construction of the constitution which I am endeavoring to

refute, the county court can take jurisdiction of such proceedings, while it cannot of the simplest case of foreclosure. No practice can be found of foreclosing a mortgage upon petition instead of bill, and, therefore, the legislature is powerless (so the argument runs) to confer the jurisdiction. I do not believe this to be a reasonable interpretation.

What then are the special cases in equity, of which jurisdiction can be given to the county court? To answer this question, we must consider not only the fair import of the language used, but also the other judicial arrangements of the constitution, and the terms employed in making those arrangements. In the judiciary article, provision is made for a supreme court, with " *general* jurisdiction in law and equity," and in the same article we find the clauses concerning the county court and the county judge. Now the words " general," and " special," are manifestly used in senses precisely opposite. The idea represented in one of these terms is the very one designed to be excluded by the use of the other. If, therefore, the *special* jurisdiction of the county court resides in the nature and quality of the cases in which it is to be exercised, irrespective of legislative enumeration, it follows that the *general* jurisdiction of the supreme court resides in those of an opposite nature and quality. If the word ." special " limits the power of the legislature in one direction, the word " general " limits it in another. If the county judge cannot receive jurisdiction in any case where the remedy was by bill in equity because it is not a special case, the supreme court cannot entertain it in a summary proceeding, because this is not a general case. In short, neither of these tribunals can take any share in the jurisdiction which is given or allowed to the other. We are thus brought to a conclusion which we know to be false. We know that the powers of the supreme court are not thus limited, and we must, therefore, reject the interpretations which lead to such a conclusion.

Why then is the jurisdiction of the supreme court denominated " general ?" Plainly because no legislative specification of the subjects of that jurisdiction is required. That of the

county court is " special," in a sense directly the opposite—that is to say, the cases in which that court may review its jurisdiction, must be specified and defined by the legislature, and hence they are called special. The terms special and general being used to denote opposite qualities of the two jurisdictions. When we are certain that we have the true meaning of one of these, we cannot be mistaken as to that of the other. If we know that the general nature of the jurisdiction of the supreme court has no reference to a distinction in the quality and character of controversies, then we may also be certain that the special jurisdiction of the county court rests on no such distinctions. It is special because it must be specially conferred by legislative act. The cases in which it may be exercised must have a special definition, and nothing can be taken without such definition or contrary to it.

The question before us was, I think, in its substance and nature involved in the recent decision of this court in *Doubleday* agt. *Heath*, (16 *N. Y. R.* 80.) That was a suit in one of the county courts for the partition of lands. It was, therefore, a case in equity according to the distinctions between law and equity, existing at the adoption of the constitution. It is true that partition could be had by petition and proceedings of a summary character in the common law courts. (2 *R. S.* 315.) But the remedy by bill in equity was as ancient as the time of Queen Elizabeth. In this state, it was modified by certain statutory provisions, but still the remedy existed and was in frequent use down to the constitution of 1846, and after that time until the Code of Procedure was enacted. Under the Code, the action for partition has now taken its place, modified as the suit in equity was, by the statutes referred to. In holding, as this court did, that jurisdiction could be given to the county court in a suit for the partition of lands within the county, it was necessarily determined that some matters which were formerly remediable by bill in chancery, could be brought by act of the legislature within that jurisdiction. That point being conceded, where does the power stop? Is it limited by another distinction to be drawn between cases in equity, where

Arnold agt. Rees.

the remedy by bill has been in some . degree modified by statutory regulations, and other cases in which there has been no interference by legislation? Are the cases in one of these clauses special and the other not within the meaning of the constitution? This cannot be the distinction which the convention or the people had in view. But even if it were, we find that the remedy by suit in equity for the foreclosure of a mortgage, had been modified by a variety of statute regulations, some of which were of great importance in the administration of that remedy. (2 R. S. 191.) I see no solid ground, therefore, for distinguishing between the case of partition already decided by this court, and the one now before us.

For the reasons suggested, I am of opinion that the legislature can confer jurisdiction on the county courts in suits for the foreclosure of mortgages upon lands in the county, and the sale of mortgaged premises.

The judgment of the supreme court should, therefore, be reversed, and judgment rendered for the defendant on the demurrer, with leave to go to trial on the issue of fact.

NOTE.—The constitution in reference to the origin and jurisdiction of county courts, is as follows:

1. " There shall be elected in each of the counties of this state, except the city and county of New-York, one county judge, who shall hold his office for four years. He shall hold the county court, and perform the duties of the office of surrogate. The county court shall have such jurisdiction in cases arising in justices' courts and in special cases, as the legislature may prescribe; but shall have no original civil jurisdiction, except in such special cases." (Const. of 1846, article 6, § 14.)

2. " The legislature may confer equity jurisdiction, in special cases, upon the county judge." (Const. of 1846, article 6, § 14.)

3. " The legislature may, on application of the board of supervisors, provide for the election of local officers, not to exceed two in any county, to discharge the duties of county judge and of surrogate, in cases of their inability or of a vacancy, and to exercise such other powers in special cases as may be provided by law." (Const. of 1846, article 6, § 15.)

It would seem that there ought not to be any radical difference of opinion in reference to the construction of these simple and plain provisions. The county court shall have such jurisdiction as the legislature may prescribe, confined to special cases, and cases arising in justices' courts, but shall have no original civil jurisdiction except in such special cases. This seems to be the fair construction